UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CR-16-TLS |
| | ) | |
| TIMOTHY HARRIS | ) | |

**OPINION AND ORDER**

The Defendant, Timothy Harris, is charged in a single count Indictment of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). This matter is before the Court on a Motion to Suppress [ECF No. 27], filed by the Defendant on July 20, 2017. In his Motion, the Defendant seeks to suppress all evidence confiscated from his home. Although the home was searched pursuant to a search warrant, the Defendant maintains that the warrant should not have been issued because the supporting affidavit was insufficient on its face to establish probable cause to believe that the evidence sought would be found at the Defendant's residence. The Defendant asks the Court to find that his arrest was pursuant to the illegal search and seizure and was therefor also illegal, and find that any drugs or weapons found in his home and any statements he made after his arrest be suppressed and excluded from use by the Government during the trial of this matter.

**SEARCH WARRANT AFFIDAVIT**

When the only evidence presented to the judge who issued the warrant is an affidavit, "the warrant must stand or fall solely on the contents of the affidavit." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (quoting *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). The duty of a reviewing court is simply to ensure that the issuing court had a substantial

basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). Accordingly, the following sets out the contents of the Search Warrant Affidavit [ECF No. 27-2], completed by Fort Wayne Police Department Detective Mark Gerardot on February 23, 2017.

The first paragraph identifies the affiant, Detective Gerardot, wherein he also states that he has probable cause to believe that evidence of possession of marijuana, synthetic drugs commonly referred to as Spice, and equipment related to the manufacture of synthetic drugs will be found at a particular residence, which is identified by address and the physical appearance of the exterior. Detective Gerardot also identifies other evidence related to the illegal drug transactions and possession that he believes will be located at the residence.

In the second paragraph, Detective Gerardot declares his personal knowledge of the facts within the Affidavit. He submits that detectives began investigating a criminal enterprise of marijuana and Spice distribution taking place at the identified residence and involving Kayla Langston and Timothy Harris. The residence was owned by Carrie and Lance Morningstar, who were currently incarcerated for Corrupt Business Influence and Manufacturing a Synthetic Drug. Langston was the Morningstars' daughter, and she was living in her parent's residence along with Harris. The Spillman system listed the residence as the address for Langston and Harris. On January 10, 2017, detectives began conducting surveillance at the address, which also confirmed that Langston and Harris were staying there. Finally, jail calls confirmed that the two were staying at the residence.

The third paragraph explains that on the date detectives began surveillance, Langston and Harris were observed leaving the residence and driving away in a small Dodge pickup truck. Detectives conducted a traffic stop. The detectives arrested Harris pursuant to an active warrant.

Langston, who was driving, was cited for driving while suspended, but she was allowed to call a licensed driver to come retrieve the truck.

In the next paragraph, Detective Gerardot provides information about a jail call that detectives reviewed later that same day. In the recorded call, Harris is speaking to Langston. He asks her if she is inside the truck. She says yes, and Harris states that there are two clips on the floor board behind the driver's seat. Langston acknowledges his comment and they continue to talk about being worried about the police finding the clips, and indicate that the clips are illegal in nature. Detective Gerardot states that, in his training and experience, he knows the term "clip" to reference a quantity of narcotics.

Paragraph 5 of the affidavit refers to events occurring the next day, January 11, 2017. Detectives against listened to a recorded jail call. In this call, Lance Morningstar calls his daughter's phone and asks to talk to "Timmy." Harris talks to Lance about the traffic stop the previous day, and admits that he had two onions on him, and that they were stinky. Harris went on to say that if they only knew (referring to the police) and they both laughed. Detective Gerardot states that he knows, from his training and experience, that onions are slang for an ounce of narcotics, and that stinky references either marijuana or Spice.

The next paragraph cites to events officers observed around 5:25 p.m. on February 21, 2017, while they were conducting surveillance of the residence. A vehicle arrived at the residence and a white male "suspect" walked up to the front door, knocked, and was let inside. He left after only a short time, which Detective Gerardot stated was indicative of drug trafficking. Detective Gerardot observed the vehicle drive away at a high rate of speed and then, by pacing the vehicle, determined that he was going about 40 miles per hour in a 30 miles per

hour zone. Detective Gerardot conducted a traffic stop. As a result of the traffic stop, the suspect was found to have a bag of marijuana in his pocket that weighed about 5.2 grams. The suspect and his passenger were both placed in the cage portion of Detective Gerardot's squad car and read Miranda rights. All of this was recorded by car camera and Detective Gerardot's body camera. Detective Gerardot asked the suspect where he bought the marijuana. The suspect stated that they had just come from the street of the target residence where they met with Tim Harris, who weighed the marijuana and sold it to them for $30.00. Detective Gerardot asked the suspect if Harris had tattoos on his face, which the suspect confirmed that he did. When Detective Gerardot asked the suspect and passenger if anyone else was at the house, they stated that Harris's girlfriend was there. They identified her as having blonde hair. This matched Detective Gerardot's known description of Langston from his past experience with her. The suspect stated that they have purchased marijuana from Harris on several occasions, both at the residence and other places. When asked how many times they did this, the suspects answered more times than they could remember—over a dozen times, maybe a couple dozen.

  In the next paragraph, Detective Gerardot explains that he was notified the next day by a citizen who lived near the residence about the neighbor's concerns about a very strong chemical smell that had been coming from the area of the target residence. The neighbor indicated that the odor caused a burning and bleeding nose, a sore throat, dizziness, and a headache. Detective Gerardot stated that he knew, from his experience and training, that production of Spice creates a very strong noxious chemical smell that can irritate the eyes, nose, and lungs of people who are in close proximity.

  The next paragraph summarizes that the jail calls, past involvement and arrest for Spice,

and the current tip corroborating what was said in the jail calls, provide probable cause to believe that the residence may contain evidence of the drug offenses he identified above.

The final paragraph before the request for the warrant to be issued notes that, in a recorded jail call from January 11, 2017, Harris told Lance Morningstar that he had started carrying a handgun for protection. This was noted to support Detective Gerardot's request for a no knock search warrant because of the risk to law enforcement associated with serving the warrant.

Based on Detective Gerardot's Affidavit, Judge Wendy Davis of the Allen Superior Court signed a search warrant for the residence on February 23, 2017. It was executed the next day.

**ANALYSIS**

A judge's duty in reviewing a search warrant is limited. The duty of a reviewing court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238–39. Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002) (quotation marks and citations omitted).

The Defendant describes the motorist and the neighbor as informants of unknown reliability. Where probable cause is based on information supplied by an informant, reviewing courts employ a totality-of-the-circumstances inquiry. *United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011). The inquiry encompasses several factors, including the degree to which the

informant acquired knowledge of the events through firsthand observation, the level of detail of the information, the interval between the date of the events and the warrant application, and the extent to which law enforcement corroborated the informant's statements. *Id.* A deficiency in any one factor can be overcome by a strong showing in another. *Id.* (noting that "[n]o one factor is determinative"). Whether the informant appeared or testified before the magistrate is also a factor. *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014).

The Defendant asserts that the motorist's statements were weak and uncorroborated. Although the Court agrees that the motorist may be characterized as an informant of unknown reliability, the totality of circumstances shows why the information contained in the Affidavit was sufficiently reliable to support a finding of probable cause. First, the key information provided by the motorist—that he bought the marijuana that Detective Gerardot found on him from a person named Tim Harris from a residence on a particular street—was based on the motorist's firsthand knowledge. The motorist's information related to a transaction that had occurred just minutes earlier, not past activities that he claimed to have seen. Second, his information was detailed. He provided not only the street of the residence and the name of the supplier, but also confirmed the amount he paid for the quantity that Harris weighed out. He also confirmed that Harris had tattoos on his face, and offered that his girlfriend, who was blonde, was also at the residence. He could not remember the exact number of times he had purchased marijuana from Harris in the past, but he knew it to be a sufficiently significant number to infer that the sale was not "a single, isolated sale . . . to a desperate acquaintance." *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004) (finding that a barebones affidavit stating that the informant had bought "a quantity of crack" from the defendant three months before a search

6

warrant was sought was not sufficient). Although he was a newly arrested informant, which subjects him to greater scrutiny, *see United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005), the judge was also entitled to consider that he had made a statement against penal interest, *see United States v. Leidner*, 99 F.3d 1423, 1420–30 (7th Cir. 1996), and that his recent encounter with Detective Gerardot gave him an incentive to supply the police with accurate information in hopes of receiving lenient punishment for his own crimes, *see Koerth*, 312 F.3d at 870. Also relevant is that the motorist was not an anonymous tipster, but was known to Detective Gerardot and could be held responsible if he gave misleading information. *See Koerth*, 312 F.3d at 871. Third, the information was fresh when Detective Gerardot applied for the search warrant. The stop occurred on February 21, 2017, and Detective Gerardot submitted his Affidavit two days later. Finally, the information was corroborated by law enforcement. Detective Gerardot was already aware, through Spillman records, jail calls, and surveillance, that Harris and Langston were staying at the residence where he had observed the motorist arrive, enter the house, and stay inside for a short period of time. The traffic stop was conducted immediately thereafter.

      The corroboration alone distinguishes this case from those where an affidavit containing an informant's tip has been found lacking. In *United States v. Peck*, for example, the affidavit was insufficient to establish probable cause because the only corroboration of the informant's tip was a search of the defendant's record, and the affidavit lacked detail even though the informant claimed to be the defendant's girlfriend. 317 F.3d 754, 757 (7th Cir. 2003). In fact, the *Peck* court specifically distinguished cases where police used other methods of corroboration, including driving by the suspected residence with the informant. *Id.* In *United States v. Bell*, it was emphasized that the court had no idea how the informant and the defendant knew each other

7

or what the informant was doing at the defendant's apartment, and that conclusory statements about other unnamed informants was not sufficient corroboration to cure this lack of detail. 585 F.3d 1045, 1050 (7th Cir. 2009). Unlike those cases, the Affidavit here was sufficient to permit the court to infer the reliability of the motorist's statements from the totality of the circumstances.

Additionally, the Affidavit contained other information that aided the judge in determining that there was a fair probability that evidence of marijuana and Spice possession and distribution would be found at the residence. The Defendant referenced clips during a jail call with Langston and he mentioned onions during a jail call with his father-in-law, who was already incarcerated for manufacturing a synthetic drug. Detective Gerardot stated that he knew from his training and experience that both of these terms were related to narcotics. The Defendant argues that clips can also refer to a magazine for holding ammunition, money holders, hair holders, or any other number of fasteners. He submits that onions usually just means onions. Although the words could have meanings other than those attributed by Detective Gerardot, the Affidavit also stated that the Defendant and Langston talked about being worried the police would find the clips and indicated that they were illegal in nature. In addition to the fact that it would be quite odd for the Defendant to actually have a stinky root vegetable on him, and then to mention it to his father-in-law while talking about his arrest, they both laughed about the police not knowing about them. In context, the reference to onions was reasonably thought to be slang for something other than an actual onion, and the Affidavit included Detective Gerardot's explanation of the significance of the term. "It is well known that drug dealers commonly use code language out of fear that their conversations will be intercepted." *United States v. Harris*, 271 F.3d 690, 702 (7th

Cir. 2001). A judge may take into account the experience and special knowledge of officers if the search warrant affidavit explains the significance of specific types of information. *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991).

The Defendant asserts that even if the references were drug related, the items under discussion were located in a vehicle, not inside the residence, and that the Seventh Circuit has held that the presence of narcotics in a defendant's car does not, by itself, establish probable cause to search his home. *See United States v. Hoffman*, 519 F.3d 672, 676 (7th Cir. 2008). "However, participation in drug trafficking activities can create probable cause to search a participant's residence, even without direct evidence that drug-related activity is occurring there, because '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.'" *Id.* (first quoting *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991), then quoting *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)); *see also United States v. Sewell*, 780 F.3d 839, 846 (7th Cir. 2015). Moreover, a search warrant may issue "even in the absence of [d]irect evidence linking criminal objects to a particular site." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (quotation marks and citations omitted). There was at least some nexus between the truck and the residence, as the truck was stopped after leaving the residence. In any event, Detective Gerardot connected the residence to drugs when he provided details about a second traffic stop. The motorist from that stop was seen arriving at the residence, spending only a short period of time inside, and then leaving. When stopped, the motorist admitted that he had just purchased marijuana from the Defendant, and had done so on previous occasions at that same location. An additional reason to believe evidence of Spice manufacturing would be found at the residence was provided by the neighbor's concerns about a strong chemical smell that

9

burned the nose and throat and caused dizziness and headaches. Again, the judge was permitted to rely on Detective Gerardot's expertise regarding the implications of the chemical smell.

The Defendant argues that the neighbor's information is not reliable or probative. He asserts that Detective Gerardot did nothing to verify the neighbor's complaint, and that Detective Gerardot's conclusion is weak because oven cleaners, insect sprays and repellents, and muriatic acid used to clean foundations or driveways all have a strong chemical smell. Detective Gerardot was not required to prove that the smell was the result of manufacturing Spice. Probable cause does not require certainty, and "even when innocent explanations exist for individual factors taken separately, reasonable suspicion may arise when the factors are considered together." *United States v. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007). Moreover, additional steps that Detective Gerardot could have taken to corroborate the neighbor's complaint do "not in any way detract from what was done." *United States v. Jones*, 208 F.3d 613, 607 (7th Cir. 2000). Thus, while the chemical smell, by itself, would not have provided the requisite probable cause, it added to the totality of facts that the judge considered.

The Defendant has requested an evidentiary hearing in connection with his Motion to Suppress. An evidentiary hearing is necessary only when there is a disputed issue of material fact that would impact the outcome of the motion. *See United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011); *United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001). Here the only disagreement is whether Detective Gerardot's Affidavit supports the judge's determination of probable cause. This is a purely legal determinations that does not require factual development through an evidentiary hearing. *See, e.g.*, *Walker*, 237 F.3d at 851 (upholding the district court's

decision to deny a suppression hearing where the defendant challenged whether an affidavit provided probable cause for a search warrant). Rather, the Court's duty is limited to reviewing whether the Affidavit supplied a substantial basis upon which to issue a search warrant. Having read the Affidavit as a whole in a realistic and common sense manner, the Court finds that substantial evidence supports the issuing judge's determination of probable cause and, thus, defers to that conclusion. *See United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (setting forth the deferential standard owed to an issuing judge when a search is authorized by a warrant).

Because the Court has concluded that the search warrant was supported by probable cause, it need not address the Government's alternative argument that, even if the Affidavit was deficient, the evidence seized from the Defendant's home would have been admissible under the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Mitten*, 592 F.3d 767, 770 (7th Cir. 2010).

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Suppress [ECF No. 27] is DENIED without need for an evidentiary hearing. Trial will be set by separate order.

SO ORDERED on August 28, 2017.

                                            s/ Theresa L. Springmann
                                        CHIEF JUDGE THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT